UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                          :
MARIO LAVANDEIRA,
                                                          :        08 Civ. 11213 (JSR) (DF)
                                        Plaintiff,
                                                          :        **REPORT AND**
                        -against-                                  **RECOMMENDATION**
                                                          :
INFUSE, LLC, et al.,
                                        Defendants.        :
-----------------------------------------------------------------------X

**TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:**

        After defendant Elizabeth Silver-Fagan, a/k/a Elizabeth Silver ("Silver") filed a motion

(Dkt. 29) to dismiss the Complaint in this trademark, copyright, and cybersquatting action, all

parties expressed an interest in trying to resolve the case through mediation.  In a conference

before this Court, however, it became apparent that the parties were not prepared to proceed to

mediation as long as one portion of Silver's motion remained undecided – specifically, the

portion of her motion that challenged the standing of plaintiff Mario Lavandeira ("Lavandeira")

to assert his claims in this action.[1]  Accordingly, in order to assist the parties with a "just, speedy,

and inexpensive determination" of this action,[2] this Court suggested, and the parties agreed, that

the Court focus its attention on that one aspect of Silver's motion.  With the parties' consent, the

Court thus denied without prejudice all portions of Silver's pending motion to dismiss, except

for the portion of the motion that raised the issue of standing.  (*See* Dkt. 54 (Order, dated

---

[1] *See* transcript of telephone conference before this Court, dated Aug. 11, 2009, at 13.

[2] Fed. R. Civ. P. 1.

Aug. 12, 2009 (Rakoff, J.)).[3])  As to that issue, which is now before this Court for a report and

recommendation, I respectfully recommend that Silver's motion to dismiss for lack of standing

(*see* Dkt. 29) be denied, for the reasons set forth below.  I further recommend that the parties be

directed to inform the Court promptly whether they intend to proceed with mediation.

## BACKGROUND

### A.     Factual Background[4]

According to his Complaint, Lavandeira – who uses the pseudonym "Perez Hilton" – is

an Internet celebrity gossip "blogger."  (Complaint, dated Dec. 23, 2008 ("Compl.") (Dkt. 1), at

¶ 13.)  In this action, Lavandeira has sued Silver, as well as defendants Infuse, LLC, Infuse FX,

and Infuse Entertainment Group (collectively, "Infuse"), Margie E. Rogers ("Rogers"), and Does

1 though 10, inclusive (all, collectively, "Defendants"), principally over Defendants' purported

use of Lavandeira's trademarks and copyrighted material on an Internet website that Defendants

operate.

Lavandeira alleges that he owns a commercial "Web log" or "blog," which he authors

under the "Perez Hilton" name, and which can be found on the Internet at the website

www.perezhilton.com (the "perezhilton" website).  (*Id*.)  Lavandeira maintains that this website

sells advertising, and that he receives considerable income as a result of the advertising revenue.

(*See id.,* at ¶ 14.)  As for his claimed trademarks, Lavandeira alleges that, since 2005, he has

---

[3] By this Order, the Court also denied without prejudice a pending motion by Lavandeira
to dismiss of strike Silver's counterclaims or affirmative defenses (Dkt. 15), and motions by
Silver and Infuse, LLC, for certain miscellaneous relief (Dkts. 44, 45).)

[4] The facts set forth herein are taken from the Complaint and, to a more limited extent,
from the supplemental submissions made by the parties on the issue of standing.

used "Perez Hilton" and derivatives of "Perez Hilton," including but not limited to "Perez," to identify his goods and services to the public.  (*Id.* at ¶ 16.)  According to his Complaint, Lavandeira is the sole owner of a number of such trademarks related to the perezhilton website, including the name "Perez," "Perez TV" and "Perez Music," as well as "welcome to PEREZHILTON.COM" (which is purportedly contained in distinctive artwork on the website). (*See id.*, at ¶ 17 (referring to these marks collectively as "Perez Hilton Marks").)  In his more recent submissions to the Court, Lavandeira also states that he has filed several trademark applications for these marks, which are currently pending.  (*See* Plaintiff's Memorandum of Law in Opposition to Defendant Elizabeth Silver's Motion to Dismiss the Complaint dated June 19, 2009 (Dkt. 35) ("Pl. Opp. Mem."), at 3; Plaintiff's Supplemental Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint dated Aug. 21, 2009 ("Pl. Supp. Mem.") (Dkt. 55), Ex. 3.)[5]  Lavandeira also alleges that he is the sole owner of two copyrights in pieces of artwork entitled "Welcome to PerezHilton.com Celebrity Juice, Not from Concentrate!"  (Compl., at ¶¶ 19-20, Exs. 1-2; *see* Declaration of Samuel L. Butt, Esq. dated June 19, 2009 ("Butt Decl.") (Dkt. 34), at Exs. 4-5.)

　　　　In asserting claims against Defendants, Lavandeira alleges that Silver, together with the other defendants, owns, manages and/or maintains a competing commercial website, www.perezrevenge.com (the "perezrevenge" website) (Compl., at ¶ 21), and that Silver, as the website's co-creator and publisher, is responsible for that website's content (*see id.*, at ¶ 10). Lavandeira alleges that the perezrevenge website is similar to the perezhilton website that

---

[5] In his Supplemental Memorandum, Lavandeira further states that, subsequent to the commencement of this action, he was granted Trademark Registration No. 3,658,122 for the mark "Perez Hilton."  (*See* Pl. Supp. Mem., Ex. 2.)

contains his celebrity blog, in that both are interactive websites that feature entertainment and celebrity news articles, photographs, videos, blog postings, and advertisements.  (*See id.*, at ¶¶ 23-25.)  In addition to claiming that Defendants have infringed his trademarks and copyrights through material posted on the perezrevenge website without his authorization (*id.*, at ¶¶ 27-31), Lavandeira claims that Defendants have wrongfully attempted to capitalize on his Internet success and have tried to confuse consumers into believing that the perezrevenge website is associated with him (*see id.*, at ¶ 28).

Further, Lavandeira accuses Silver and Infuse of violating the Digital Millennium Copyright Act ("DMCA") by issuing a number of knowingly false "Notices of Infringement" to the Internet Service Provider ("ISP") associated with the perezhilton website, in an alleged attempt to harm Lavandeira's business.  (*See id.,* at ¶¶ 34-39.)  More specifically, Lavandeira alleges that Silver, as Infuse's alter ego and acting on Infuse's behalf, issued approximately 160 DMCA Notices of Infringement, in which Silver intentionally, and in bad faith, misrepresented that she owned copyrights in certain stories and that Lavandeira had copied those stories.  (*Id.*, at ¶¶ 10, 34-35.)  According to Lavandeira, neither Silver nor Infuse actually owned or ever registered copyrights in any of the stories identified in the DMCA Notices.  (*Id.*, at ¶ 36.) Lavandeira asserts that Silver and Infuse knew this, and issued the Notices in an effort to cause the recipient ISP to remove the perezhilton website, which would make it difficult for Lavandeira to continue to post celebrity news and gossip.  (*Id.*, at ¶¶ 37-38.)

For her part, Silver contends that Lavandeira is not the owner of the perezhilton website (Declaration & Statement of Authorities in Support of April 17, 2009 Motion by *Pro Se* Defendant Elizabeth Silver, dated Apr. 17, 2009 ("Silver Decl."), attached to Defendant Silver's

Motion to Dismiss, dated Apr. 17, 2009 (Dkt. 29), at ¶ 35); that, at the time this action was filed, Lavandeira did not own any registered trademarks related to the perezhilton website (*id*. at ¶¶ 26-28, 38); and that Defendants' perezrevenge website has not used any marks similar to, or derived from, any claimed or unregistered Perez Hilton Marks (*see id.*, at ¶ 42).  Moreover, Silver asserts that Lavandeira "has no copyright in any work that was infringed." (*Id.*, at ¶ 62.) For these reasons, Silver argues that Lavandeira lacks standing to bring the claims alleged in his Complaint.  (*See id.*, at ¶¶ 60-63.)  In addition, Silver alleges that she is the owner of two copyrights relating to the content of the perezrevenge website, and that these copyrights protect the text, editing and compilation of the articles, postings, and stories that have been reported on that website.  (*Id.* at ¶¶ 32-34, Exs. 9-10.)  According to Silver, nothing on the perezrevenge website has been deceptive or misleading about its source or content.  (*Id.*, at ¶ 45.)

B.    **Procedural History**

1.    **The Prior California Action**

As the Court is already aware, Lavandeira previously filed a federal action against Silver, Rogers and Infuse, in the United States District Court for the Central District of California, asserting claims of trademark dilution, false designation of origin, unfair competition and violation of the Anti-Cyber Squatting Consumer Protection Act.  *See Lavandeira v. Infuse, LLC*, No. CV 08-4764 (GAF) (AJWx) (C.D. Cal.).  Silver, however, argued vigorously that the court in California lacked jurisdiction over her.  Eventually, Lavandeira withdrew the action voluntarily as against Silver and Rogers, although he moved for a default against Infuse, LLC, which had apparently never appeared in the action through counsel.

5

On April 28, 2009, the federal court in California granted Lavandeira's motion for a default judgment against Infuse, LLC, *see id.*, slip op. at 15 (C.D. Cal. Apr. 28, 2009), and, on May 6, 2009, the court entered judgment against that defendant, *see id.,* slip op. at 2 (C.D. Cal. May 6, 2009).  The court in California also entered a permanent injunction against Infuse, LLC, (1) enjoining it and its officers, agents, employees, attorneys, successors and assigns (including Silver) from, *inter alia*, using any of Lavandeira's marks, including the term "Perez" and the domain name "perezrevenge.com," and (2) ordering it to transfer the ownership of the "perezrevenge.com" domain name to Lavandeira.  *See id.*, at 2-3.  Silver has informed this Court that this transfer of ownership has now taken place (*see* Defendant Silver's Reply Declaration, dated July 17, 2009 ("Silver Reply Decl.") (Dkt. 40), at ¶ 12(b)), in accordance with the California court's order.[6]

### 2.    The Instant Action

After Silver argued that she could not be sued in California, and after she commenced her own action against Lavandeira in this Court,[7] Lavandeira also filed suit here, on December 23, 2008.  In this case, Lavandeira pleads certain claims that mirror those he raised and then withdrew as against Silver and Rogers in California (*i.e.,* claims for trademark dilution, unfair competition, false designation of origin, and violation of the Anti Cybersquatting Consumer Protection Act), adds certain claims (including claims for alleged violations of the Copyright Act

---

[6] By letter dated June 22, 2009, Lavandeira's counsel also informed this Court that the district court in California has denied motions by Silver and Infuse, LLC, to vacate the judgment entered against Infuse, LLC.  (*See* letter to the Court from Samuel L. Butt, Esq., dated June 22, 2009 (attaching copy of Order Re:  Motion to Vacate Default Judgment, dated June 18, 2009, in *Lavandeira v. Infuse, LLC,* CV-08-4764 (GAF) (AJWx)).)

[7] *Silver v. Lavandeira*, 08 Civ. 06522 (JSR) (DF).

and the DMCA), and seeks additional forms of relief.  Lavandeira again seeks judgment

enjoining Defendants from, *inter alia*, using the domain name perezrevenge.com, using the term

"Perez," using any mark that is identical to the Perez Hilton Marks, and infringing Lavandeira's

copyrights (*see* Compl., at 14-15), and again requests that the Court require Infuse to assign the

perezrevenge.com domain name to Lavandeira (*id.* at 15), but he also now seeks statutory

damages, costs, and attorney's fees (*id.*, at 15-16).

Silver answered the Complaint on January 12, 2009, asserting that Lavandeira's

Complaint fails to state a claim and that he lacks standing to bring this action.  (*See* Silver's

Answer, Affirmative Defenses and Counterclaims dated Jan. 12, 2009 (Dkt. 10), at 6.)[8]  In

addition, on April 17, 2009, Silver filed a motion to dismiss the Complaint, or alternatively, for

summary judgment.  (S*ee generally* Silver Decl.)  In her motion, Defendant Silver argues that

Lavandeira's claims should be dismissed on a number of grounds, among them that he lacks

standing to pursue his claims.  On the standing issue, Silver primarily contends that Lavandeira

has no claim because he is not the registered owner of any mark protected under the Lanham

Act, owns no copyright that was infringed, and is not the owner of the perezhilton website.  (*See*

*id.,* at ¶¶ 60-63.)

On June 19, 2009, Lavandeira filed an opposition to Silver's motion.  (*See* Pl. Opp.

Mem., at 7-11.)  On July 17, 2009, Silver filed a reply (Dkt. 40), and, on July 23, 2009, she filed

a supplemental declaration (Dkt. 41).  In connection with her reply and supplemental

submissions, Silver submitted written correspondence and testimony given by Lavandeira in

---

[8] Defendants Rogers and Infuse also filed Answers and Affirmative Defenses.  (*See*
Answer & Affirmative Defenses of Margie E. Rogers dated Jan. 26, 2009 (Dkt. 11); Answer &
Affirmative Defenses of Infuse, LLC, dated May 11, 2009 (Dkt. 32).)

another action, all of which purportedly support Silver's view that Lavandeira is not the owner of

the perezhilton website and thus lacks standing to assert his claims.  (*See* Silver Reply Decl.,

Ex. 1; Defendant Silver's July 23, 2009 Supplemental Declaration (Dkt. 41), Ex. 1.)

Finally, following an August 11, 2009 conference before the Court (*see* n.1, *supra*), and

in response to the Court's questioning, all parties (including defendants Rogers and Infuse)

submitted certain additional briefing on the issue of standing.  (*See* Pl. Supp. Mem.; Defendants'

Memorandum of Law in Support of Defendant Silver's Motion to Dismiss the Complaint dated

Aug. 17, 2009 ("Def. Supp. Mem.") (Dkt. 53).)[9]

## DISCUSSION

## I.  APPLICABLE LEGAL STANDARDS

### A.  Rule 12

Where, as here, a defendant has already filed an answer to the complaint, a motion

challenging the plaintiff's standing to sue should be made pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure (governing motions on the pleadings), although the Court would

analyze such a motion under the same standards as would be applicable to pre-answer motions

challenging standing under Rule 12(b).  *See Patel v. Contemporary Classics of Beverly Hills*,

259 F.3d 123, 126 (2d Cir. 2003) (finding standard for granting a Rule 12(c) motion is identical

to that of a Rule 12(b)(6) motion); *Ryan v. Valpone Stamp Co.*, 107 F. Supp. 2d 369, 375 n.2

---

[9] Together with their Supplemental Memorandum, Defendants submitted a declaration of
Nicholas A. Penkovsky, Esq.  (*See* Def. Supp. Mem., Ex. 1.)  Lavandeira has asked the Court to
strike this declaration as an inappropriate expert submission.  (*See* Pl. Supp. Mem., at 5.)  As
Penkovsky does not represent any party and does not appear to have personal knowledge of any
facts relevant to the issues before the Court, the Court has not considered his declaration in
connection with this Report and Recommendation.

(S.D.N.Y. 2000) (when deciding a motion for lack of subject matter jurisdiction pursuant to 12(c), a court should apply the same standard as that applicable to a motion under Rule 12(b)(1)); *Cherry v. Hillside Manor Rehab. & Extended Care*, No. 06 Civ. 3296 (NG), 2008 U.S. Dist. LEXIS 48235, at *8 n.1 (E.D.N.Y. June 20, 2008) (same).

Under Rule 12(b), the issue of standing may be raised either on a motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), or on a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6). *See RBCI Holdings, Inc. v. Drinks Ams. Holdings, Ltd.*, No. 07 Civ. 2877 (DC), 2008 U.S. Dist. LEXIS 26122, at *7-8 (S.D.N.Y. Mar. 20, 2008). The more appropriate of these procedural vehicles is Rule 12(b)(1), at least where constitutional issues are presented. *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87-88, n.6 (2d Cir. 2006); *see also RBCI Holdings*, 2008 U.S. Dist. LEXIS 26122, at *8 (stating the "proper procedure for a district court presented with a standing motion is to consider Article III standing on a Rule 12(b)(1) motion first" before considering statutory standing issues that "'may be closely related to' . . . the merits[]" (internal citation omitted)).

### 1. Rule 12(b)(1)

A claim is "'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Kakushadze v. Chertoff*, No. 07 Civ. 8338 (DF), 2008 U.S. Dist. LEXIS 60995, at *12 (S.D.N.Y. July 24, 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The plaintiff bears the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists," *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003), and the

district court may examine evidence outside of the pleadings to make this determination," *see Makarova*, 201 F.3d at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)); *see also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (in resolving a Rule 12(b)(1) motion, district courts may "resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits" (citation omitted)). "'[T]he general rule is that subject matter jurisdiction is assessed at the time a complaint is filed.'" *Kakushadze*, 2008 U.S. Dist. LEXIS 60995, at *13 (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 510 F. Supp. 2d 299, 306 (S.D.N.Y. 2007)).

## 2.   Rule 12(b)(6)

A case is subject to dismissal under Rule 12(b)(6) where the complaint is not legally sufficient to state a claim upon which relief can be granted. *See Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991). In deciding a Rule 12(b)(6) motion, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted); *accord Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). A court should grant dismissal where, after considering plaintiffs' allegations in this generous light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992), *cert. denied*, 507 U.S. 961 (1993). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted). Rather, in order to withstand a motion to dismiss, a complaint must plead

"enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

    **B.**    <u>**Standing**</u>

        **1.**    <u>**Constitutional Standing**</u>

Standing is an essential component of the case-or-controversy requirement of Article III of the Constitution. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To satisfy Article III's standing requirements, a plaintiff must show an injury in fact (1) that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Id.* "The injury must affect the plaintiff in a personal and individual way." *Id.*, at n.1. As with any challenge to jurisdiction under Rule 12(b)(1), the party invoking federal jurisdiction bears the burden of establishing the elements of standing, *id.* at 561, and a plaintiff must have standing at the time a lawsuit is filed, *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190-91 (2000); *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993).

        **2.**    <u>**Statutory Standing**</u>

Determining whether a plaintiff has "statutory standing" involves a separate inquiry from determining constitutional standing. *See WR Huff Asset Mgmt. Co.*, *v. Deloitte & Touche, LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (noting that the statutory factors establishing standing under the Securities Exchange Act "are separate and apart from the elements of constitutional

standing"); *see also Levine v. Atricure, Inc.*, 594 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (stating "statutory standing is not a substitute for constitutional standing") (citation omitted).  "Statutory standing is simply statutory interpretation:  the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury."  *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) (emphasis in original).

Where, as here, statutory standing is closely bound to the merits, courts have analyzed statutory standing pursuant to Rule 12(b)(6).  *See RBCI Holdings*, 2008 U.S. Dist. LEXIS 26122, at *12-13 (applying Rule 12(b)(6) and finding plaintiff's factual allegations were "sufficient to render 'plausible'" a statutory claim under the Lanham Act); *Chenkin v. 808 Columbus LLC*, 570 F. Supp. 2d 510, 520-521 (S.D.N.Y. 2008) (dismissing plaintiff's claim pursuant to 12(b)(6) on grounds that plaintiff lacked statutory standing); *E.ON AG v. Acclona, SA*, 468 F. Supp. 2d 537, 548 n.10 (S.D.N.Y. 2006) (stating statutory standing is a motion that may be brought under Rule 12(b)(6)); *McBrearty v. Vanguard Group, Inc.*, No. 08 Civ. 7650 (DLC), 2009 U.S. Dist. LEXIS 29775, at *5-6, 10 (S.D.N.Y. Apr. 2, 2009) (dismissing plaintiffs' RICO claims for lack of statutory standing under Rule 12(b)(6)).

II.    **SILVER'S CHALLENGE TO LAVANDEIRA'S STANDING**

A.    **Claimed Lack of Constitutional Standing**

Based on her most recent submissions, it appears that Silver is now principally taking the position that, because Lavandeira's counsel has asserted in written correspondence related to another case that Lavandeira does not own the perezhilton website (*see* Def. Supp. Mem., at 2[10] (referencing Letter to Brian D. Spitz, Esq. from Bryan J. Freedman, Esq. dated Apr. 3, 2009)),

---

[10] As this memorandum is not paginated, the Court has assigned it page numbers.

Lavandeira cannot establish that he has suffered a personal injury as required by Article III of the Constitution (*see id.*, at 3 (arguing that, absent ownership of the website, Lavandeira cannot show a personal injury "upon which any damage or dilution claims are premised")). Silver also points to deposition testimony given by Lavandeira in an unrelated action that, in her view, supports her contention. (*See id.*, at 2 (referencing Deposition of Mario Lavandeira, conducted June 20, 2008, in *Splash News & Picture Agency, et al. v. Lavandeira*, No. CV 07-2668 (VBF) (JCx) (C.D. Cal.)).) In response, Lavandeira does not set forth evidence of his ownership of the perezhilton website, but rather argues that the question of whether he owns the *website* is irrelevant (Pl. Supp. Mem., at 1) because, as the owner of various trademarks and copyrights that have allegedly been infringed, and as the author of the celebrity news blog that Silver has allegedly tried to shut down through her service of false DMCA notices, he has suffered personal harm from Defendants' conduct, and thus has standing to sue under the various statutes he has invoked (*see id.*, at 1-4).

Lavandeira has the better of these arguments. Even if this Court were to accept Silver's proffered evidence that Lavandeira does not own the perezhilton website, it would be immaterial to the question before the Court, which turns only on whether Lavandeira has adequately demonstrated the existence of a case or controversy in which he has "a sufficiently personal stake in the outcome of the suit so the parties are adverse." *WR Huff Asset Mgmt.*, 549 F.3d at 107 (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

As the claimed owner of the so-called "Perez Hilton Marks" and two registered copyrights, Lavandeira alleges that, at the time the Complaint in this action was filed, he lost his right to control the commercial and trade use of those marks and his copyrights, which caused

him to lose earnings from potential advertising sales and suffer damage to his reputation and

good will.  (Compl., at ¶ 40.)  In other words, Lavandeira has pleaded a personal injury-in-fact

that "result[ed] from the putatively illegal action," *Central States Se. & Sw. Areas Health &*

*Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005) (internal

quotation omitted), *i.e.,* from Defendants' alleged use of Lavandeira's trademarks and

copyrighted artwork on their website without Lavandeira's authorization (Compl., at ¶¶ 27-30).

Lavandeira also alleges that his injury may be redressed, at least in part, by statutory damages.

Taken together, these allegations are sufficient to demonstrate a case or controversy, for

purposes of conferring Article III standing.

It also appears that Silver may be challenging Lavandeira's constitutional standing on the

ground that he has already secured a default judgment in California that affords him the

injunctive relief he seeks.  (Def. Supp. Mem., at 2-3.)  More particularly, Silver asserts that the

doctrines of res judicata and collateral estoppel bar Lavandeira's claims.  (*See id.*, at 4-5.)

Lavandeira, however, argues that Silver's preclusion arguments are procedurally improper and

misplaced, especially given that the action in California was voluntarily withdrawn as against

her.[11]  (Pl. Supp. Mem., at 4.)

Again, Lavandeira's arguments are persuasive, as preclusion is not a jurisdictional

matter, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (citing

Federal Rule of Procedure 8(c)); *McKithen v. Brown*, 481 F.3d 89, 104 (2d Cir. 2007);

*Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994) (noting "as an initial

---

[11] Lavandeira notes in his Supplemental Memorandum that, "to the extent any claims
against Infuse are the same as those in the Prior California Action, [counsel] will consider how
to proceed."  (Pl. Supp. Mem., at 4 n.4.)

matter . . . the doctrine of res judicata or issue preclusion in no way implicates jurisdiction"). In

any event, the judgment obtained by Lavandeira against Infuse, LLC, would not preclude

Lavandeira from now asserting claims against other parties. Lavandeira voluntarily withdrew

his California action against Silver, after she argued that the court in California lacked

jurisdiction over her. Certainly, if Silver was correct in her prior jurisdictional argument,

Lavandeira would not be barred from asserting claims against her in this Court, and the same

would be true with respect to Rogers. *See Computer Assocs. Int'l v. Altai, Inc.*, 126 F.3d 365,

370 (2d Cir. 1997) (finding that "even where a second action arises from some of the same

factual circumstances that give rise to a prior action, res judicata is inapplicable if formal or

statutory barriers precluded the plaintiff from asserting its claims in the first action"); *Pricaspian

Dev. Corp. v. Royal Dutch Shell, plc*, No. 08 Civ. 9726 (DLC), 2009 U.S. Dist. LEXIS 47571, at

*29 (S.D.N.Y. June 3, 2009) (same). Further, even as to Infuse, LLC, at least some of the claims

that Lavandeira has asserted here, under the Copyright Act and the DMCA, are distinct from the

Lanham Act claims that he asserted in California, and thus it cannot be said that all of his claims

have been previously adjudicated. Finally, Lavandeira is seeking monetary relief here (in the

form of statutory damages and fees) that he did not obtain in the California action.

Accordingly, even if Lavandeira's request for prospective injunctive relief has been

rendered moot by Infuse, LLC's transfer of the perezrevenge.com domain name to him pursuant

to the injunction issued by the court in California, there is no basis for Silver's apparent

argument that this should result in a complete dismissal of this action. "Where one of the several

issues presented becomes moot, the remaining live issues supply the constitutional requirement

of a case or controversy." *Powell v. McCormack*, U.S. 395 U.S. 486, 497 (1969) (citing *United*

*Public Workers v. Mitchell*, 330 U.S. 75, 86-94 (1947)).  Moreover, "[w]here claims for damages or other monetary relief remain, mootness is generally avoided."  *Local 100, Transp. Workers Union v. Transp. Workers Union of Am.*, No. 03 Civ. 3512 (PKC), 2005 U.S. Dist. LEXIS 20012, at *11 (S.D.N.Y. Sept. 13, 2005); *see also Ellis v. Blum*, 643 F.2d 68, 82-83 (2d Cir. 1981) (finding that while plaintiff's claims for injunctive and declaratory relief were moot, plaintiff's damages claim kept the action alive); *Dean v. Blumenthal*, 577 F.3d. 60, 66 (2d Cir. 2009) (stating that defendant's withdrawal of challenged policy did not render moot plaintiff's requested relief for past constitutional violations).

For these reasons, even if Silver is correct that Lavandeira does not own the perezhilton website, and even taking judicial notice of the judgment and injunction awarded to Lavandeira in California, there is no basis for this Court to conclude, under Fed. R. Civ. P. 12(b)(1), that Lavandeira lacked constitutional standing to commence this action.

### B.    Statutory Standing

As for any challenge to Lavandeira's statutory standing to bring this action, Silver seems to raise the same arguments she raises with respect to constitutional standing, although she also appears to argue that Lavandeira does not actually hold any trademarks or copyrights that could confer him with rights under the relevant statutes, or that have been infringed.  (*See* Silver Decl., at ¶¶ 60-63.)  As discussed below, however, Lavandeira's allegations, if accepted as true under Rule 12(b)(6) for purposes of considering statutory standing, are sufficient to satisfy the elements of standing for each of the claims pleaded in the Complaint.

1.    **The Lanham Act**

a.    **Unfair Competition and False Designation of Origin**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides that "'any person who believes he or she is likely to be damaged' by the false or misleading use of a trademark may bring a civil action against the wrongdoer." *RBCI Holdings*, 2008 U.S. Dist. LEXIS 26122, at *9 (quoting Section 1125(a)); *see Berni v. Int'l Gourmet Rests. Of Am., Inc.*, 838 F.2d 642, 647-48 (2d Cir. 1988). "One need not be the 'owner' or 'registrant' of a trademark to sue for infringement under [Section] 43(a)." *RBCI Holdings,* 2008 U.S. Dist. LEXIS 26122, at *10 (internal citations omitted). A plaintiff must show, however, "potential for a commercial or competitive injury." *Berni*, 838 F.2d at 648.

Here, regardless of whether Lavandeira owned any registered trademarks at the time the Complaint was filed, he has sufficiently alleged a reasonable interest in the Perez Hilton Marks to assert a plausible claim under Section 43(a). Lavandeira claims that he owns these marks and has used them to identify himself, his goods and services, and the perezhilton website. (Compl., at ¶ 16.) As set out above, Lavandeira also alleges that Defendants have used the marks on the perezrevenge website without his permission or authorization, that such use has been likely to confuse consumers, that Defendants' conduct has caused him to lose the right to control the commercial and trade use of his marks, that he has lost potential advertising sales as a result of Defendants' conduct, and that he has suffered harm to his reputation and good will. (*See id.* at ¶¶ 27-30; 42-46.) Based on these allegations, Lavandeira's claims for unfair competition and false designation of origin against Silver and Rogers cannot be rejected for lack of statutory standing.

### b.    Trademark Dilution

Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides the owner of a famous mark with a right of action against any person who uses that mark in commerce and causes dilution of the distinctive quality of the mark.  To establish trademark dilution, a plaintiff must show that:  "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services."  *Savin Corp. v. Savin Group*, 391 F.3d 439, 448-49 (2d Cir. 2004).  Lavandeira has asserted that he owns the Perez Hilton Marks, that the marks are famous and distinctive within the meaning of Section 43(c), and that the marks were famous and distinctive prior to Defendants' use of the marks.  (Compl., at ¶ 48.)  Lavandeira further alleges that the use of his marks on the perezrevenge website diluted the distinctive quality of his marks and was done without his authorization and with the willful intent to trade on his reputation and good will.  (*Id.*, at ¶¶ 49-50.)  Based on these allegations, Lavandeira has statutory standing to assert his claim for trademark dilution against Silver and Rogers.

### c.    Anti Cybersquatting Consumer Protection Act

Lavandeira also has standing to pursue his claims against Silver and Rogers for violations of the Lanham Act's anti-cybersquatting provisions.  *See* 15 U.S.C. § 1125(d)(1)(A).  To succeed on such a claim, Lavandeira must establish that:  (1) Silver and Rogers had a bad faith intent to profit from use of the Perez Hilton Marks; (2) the Perez Hilton Marks are either distinctive or famous; and (3) the perezrevenge domain name is identical or confusingly similar to Lavandeira's domain name.  *See Freedom Calls Found. v. Bukstel*, No. 05 Civ. 5460 (SJ) (VVP),

18

2006 U.S. Dist. LEXIS 19685, at *40 (E.D.N.Y. Mar. 3, 2006) (citing *Sporty's Farm LLC v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 497-99 (2d Cir. 2000)).

Lavandeira alleges that Silver and Rogers, together with the other defendants, registered the perezrevenge website, which, he asserts, is identical to or confusingly similar to his allegedly famous and/or distinctive marks, and that they did so with the bad faith intent to profit from the registration of that domain name. (*See* Compl., at ¶¶ 54-56.) Regardless of whether Lavandeira will ultimately prevail on his cyberquatting claim, these allegations are sufficient to satisfy the requirements of statutory standing for such a claim.

## 2. The Copyright Act

The Copyright Act provides that the "legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b); *see Harris v. Simon & Schuster, Inc.*, No. 08 Civ. 3477, 2009 U.S. Dist. LEXIS 72842, at *24 (S.D.N.Y. Aug. 18, 2009); *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) (quoting 17 U.S.C. § 501(b)). The Act further states that "a certificate of [copyright] registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c); *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001).

Lavandeira alleges that he is the owner of two copyrights (*see* Compl., ¶¶ 19-20, and Exs. 1 and 2 thereto (copies of copyright registrations)), and he claims that Defendants infringed these copyrights by willfully, intentionally and purposefully publishing, marketing and utilizing "substantially similar images, in both ideas and expression," on Defendants' perezerevenge

website.  (Compl. at ¶¶ 62-63.)  This is sufficient to satisfy the elements of statutory standing for a claim of copyright infringement.

### 3.    The Digital Millennium Copyright Act

Section 512(f) of the DMCA provides that any person who knowingly misrepresents that material is infringing shall be liable for damages incurred by the alleged infringer.  *See* 17 U.S.C. § 512(f).  In his Complaint, Lavandeira alleges that defendants Silver and Infuse violated Section 512(f) by issuing to the ISP of the perezhilton website notices that falsely accused Lavandeira of infringing Silver's alleged copyrights.  (Compl., at ¶¶ 68, 75.)  Lavandeira asserts that neither Silver nor Infuse own copyrights in any of the stories identified in the notices.  (*Id.*, at ¶ 72.) Moreover, Lavandeira contends that Silver and Infuse did not issue these notices in good faith, but rather issued them for the purpose of harassment and to cause serious economic harm to Lavandeira and the website on which he posts his blog.  (*Id.*, at ¶¶ 39, 69-71.)  These allegations, if taken as true under Rule 12(b)(6), are sufficient to meet the standing requirements of Section 512(f), as Lavandeira has plausibly alleged an injury caused by Silver and Infuse, for which he may seek recovery under the statute.

## III.    SILVER'S REQUEST FOR DISCOVERY ON THE ISSUE OF STANDING

Silver finally argues that, if her motion on the issue of standing is denied, she should at least be granted jurisdictional discovery on that issue.  (Def. Supp. Mem. at 1, 4.)  On this point, she argues that the Court should "take note of the conflicting statements by Lavandeira and his counsel" regarding ownership of the perezhilton website – statements which, according to Silver, raise "an issue that can only be resolved by discovery to be conducted by Silver and Infuse, at least limited jurisdictional and website ownership discovery."  (*Id.*, at  3.)

Silver's prior motion for jurisdictional discovery (Dkt. 23) was denied by this Court without prejudice to renew on papers already filed, following resolution of the instant motion. (*See* Order, dated Aug. 11, 2009 (Mem. Endors.) (Dkt. 50).) Yet, as discussed above, Lavandeira's ownership of the perezhilton website need not be determined in order for the Court to find that he has constitutional and statutory standing to assert his claims, and thus I recommend that Silver's renewed request for discovery be denied.

## CONCLUSION

For the reasons set forth above, I respectfully recommend:

1.    that Silver's motion to dismiss Lavandeira's Complaint (Dkt. 29) be denied, to the extent the motion rests on the argument that Lavandeira lacks standing;

2.    that Silver's renewed request for jurisdictional discovery be denied;

3.    that the parties be directed to inform the Court whether, as discussed above, they wish to proceed with mediation at this juncture; and

4.    that, if the parties do proceed with mediation, an additional dispositive motion filed by Silver (Dkt. 51) be denied without prejudice, pending the outcome of the mediation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, U.S.D.J., United States Courthouse, 500 Pearl Street, Room 640, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN TEN

(10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE

APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension*

*Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        November 24, 2009

                        Respectfully submitted,


                        DEBRA FREEMAN
                        United States Magistrate Judge


Copies to:

Hon. Jed S. Rakoff, U.S.D.J.

Samuel L. Butt, Esq.
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004
Fax: (212) 344-7677

Ms. Elizabeth Silver
10 Ferncliff Terrace
Short Hills, NJ 07078
Fax: (973) 467-3307

Ms. Joy Hochstadt, Esq.
Joy Hochstadt, P.C.
300 Central Park West
Suite 2E
New York, NY 10024
Fax: (212) 580-9930

22